26784.   PULASKI COUNTY *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND *et al.*

DECIDED JULY 2, 1938.

*H. F. Lawson,* for plaintiff.

*Little, Powell, Reid & Goldstein, B. D. Murphy, D. C. Chalker, H. E. Coates,* for defendants.

BROYLES, C. J.   Pulaski County brought this action against J. J. Whitfield, a former commissioner of roads and revenues of that county, and Fidelity and Deposit Company of Maryland, as surety upon Whitfield's official bond, to recover attorney's fees and traveling expenses alleged to be damages arising from an alleged breach of the bond.   Each of the defendants filed demurrers to the petition as finally amended, and the court sustained the demurrers and dismissed the case.   The petition set forth, in substance, the following facts and allegations: Before the commencement of the action, Whitfield had been county commissioner of Pulaski County. The county owned Georgia State Highway refunding certificates of the aggregate face value of $125,000, which were in the custody and control of Whitfield, who entered into an agreement with the Trust Company of Georgia, hereinafter called the trust company, by the terms of which the trust company undertook to act as "escrow agent" of the county in handling the certificates, in accordance with the following plan: At the time of the execution of the agreement the county had outstanding and unpaid $95,000 worth

of road and bridge bonds, maturing at various dates and in various amounts, which the county had been unable to acquire, and therefore could not apply the proceeds of the certificates to the retirement of the bonds. Under the circumstances it was deemed desirable for the county to deposit the certificates in escrow with the trust company, and to deliver them to the company as escrow agent, transferring and assigning them to said agent, and giving to it authority to collect them as they matured, and "to hold the proceeds as a sinking-fund for the purpose of retiring the road and bridge bonds above referred to, establishing thereby a sinking-fund with the proceeds of said certificates as provided by the statutes of Georgia." For its services as escrow agent the county agreed to pay to the trust company a flat fee of $300. Under the agreement, the county transferred certificates of the face value of $125,-000 to the trust company as agent, which was to hold the certificates and collect the proceeds thereof as payments were made according to the terms of the certificates; and to establish with the proceeds a sinking-fund to retire the road and bridge bonds; and authorized the trust company as agent, if the bonds of the county should not be available for retirement, to invest the proceeds of the certificates in securities now approved by law, and to hold the securities to provide and insure a sinking-fund to retire the road and bridge bonds as they might mature. The agreement recited that it was executed pursuant to a resolution theretofore passed by Whitfield as county commissioner of Pulaski County.

Both the agreement and the contract provided, with respect to the services to be rendered by the escrow agent, as follows: That the trust company, as agent, should receive title to said certificates and hold them until the time for their redemption, and upon their redemption to present them for payment, and receive payment thereon; to accept payment of the certificates and to apply the proceeds to the retirement of the bonds and interest; and to invest and reinvest any funds which the escrow agent might not require for immediate use, in the securities of the State of Georgia, or the bonds of any county of the State or any municipality thereof, or in bonds or other securities of the United States of America, or other securities in which trust funds might by law be invested, and to hold the investments until such time as the proceeds thereof might be needed for the payment of the principal and interest of

the bonded debt of the county; to receive delivery of the bonds and certificates of the county when paid, or to deliver them to the commissioner of roads and revenues of the county for cancellation; to deliver to the then commissioner of roads and revenues of the county any balance of the funds or securities which might be left in the hands of the escrow agent after the retirement of all the bonded indebtedness of the county. The contract further provided that the escrow agent should not be liable for mistakes of judgment, or for the neglect or default of other persons, and should not be liable for the decline in value of any securities purchased by it, or retained by it, and should in no event be liable except for its own breach of trust. The escrow agent was relieved of responsibility for the default of the highway department, and was under no duty other than to present said certificates for payment; it was not bound to enter into litigation for the collection of the certificates, or to do anything other than to present them for collection, and was to be fully indemnified against all loss, damages or expenses it might incur.

The contract was supported by the resolution referred to therein, in all particulars except the terms of the contract which relieved the escrow agent from liability for mistakes of judgment, for the decline in value of any securities purchased by it, and against any liability except for its own breach of trust. The resolution was silent also in respect to that portion of the contract wherein it provided that the escrow agent should not be responsible for the default of the highway department in the payment of the certificates, and that the only duty in that respect was to present the certificates for payment. The resolution was likewise silent in regard to the provisions that the escrow agent was not bound to enter into any litigation unless it had first been indemnified against expense, loss, and damage. The resolution appears upon the minutes of the county commissioner, but the contract was never recorded. When Lee, the successor of Whitfield, took office, he was at first unable to find the highway certificates, and made demand upon Whitfield for them. Whitfield informed Lee that the certificates were on deposit with the Trust Company of Georgia, but did not inform him upon what terms the trust company held them. Whereupon Lee, as county commissioner, wrote to the trust company, inquiring whether it held the certificates, and, if so, upon what

terms. The trust company replied that it did hold the certificates, pursuant to a written agreement, but that it did not have a copy of the agreement, and referred Lee to Whitfield for information respecting the terms of the agreement. After a search, the agreement was found in a pigeonhole in the vault. All of this occurred within a few days after Lee became commissioner. Thereupon Pulaski County brought an action against Whitfield, the surety on his bond, and the Trust Company of Georgia, to recover the certificates. After the suit was brought, the Trust Company of Georgia and Pulaski County entered into an agreement by the provisions of which the trust company surrendered the certificates back to Pulaski County, and the suit against all of the defendants was dismissed. This agreement provided that it was made pursuant to a resolution by the provisions of which the Trust Company of Georgia and Pulaski County abrogated and rescinded the contract under which the trust company held said certificates. The agreement contained the following material provisions: That while Pulaski County, under the original agreement, agreed to pay said trust company $300 for its services, the payment had not actually been made; that the original contract was abrogated and rescinded; and that "this contract is executed by both parties hereto, and is *accepted by both parties as a complete compromise and settlement of all pending contentions between them,* and especially *in settlement of all issues involved* in a suit recently brought by Pulaski County in Pulaski superior court against the Trust Company of Georgia, J. J. Whitfield, and others." (Italics ours.)

In the petition in the present cause it is alleged that the contract between Whitfield and the trust company, the resolution upon which it was based, and the entire transaction were unlawful and void, in that the resolution was passed and the contract was entered into without authority of law; that the whole constituted an invalid transaction, in that Whitfield as county commissioner was without authority of law to appoint the trust company as escrow agent of Pulaski County, or to empower the escrow agent to take a transfer and assignment of the certificates, or to collect them as they matured, and was without authority to hold the proceeds of the certificates as a sinking-fund for the purpose of retiring the bonds referred to in the resolution; that the commissioner unlawfully undertook to designate the trust company as

depositary for the public funds and property of the county, because the trust company had not given bond or deposited securities to secure the county against loss, as is provided by law; that except for the provisions of the resolution the county had never designated the trust company as a depositary for public funds, and the company had not complied with the requirements of law in respect to depositaries of the public funds of the county; that there was no authority of law for the county to pay the escrow agent $300 for its services as such; that there was no authority of law for Whitfield as commissioner to contract with the trust company that it should invest and reinvest the proceeds of the certificates, since the duty of creating a sinking-fund for the bonded indebtedness of the county rested solely upon the commissioner of roads and revenues of the county, and that duty was not a discretionary duty which might be delegated by the commissioner to any one; that the contract was further void in that it differed in material respects from the resolution wherein the trust company contracted against its liability under the provisions of the agreement except for its own breach of trust, that provision being alleged to be contrary to the public policy of the State with reference to handling public funds and public property; that the contract was void in that the commissioner of roads and revenues of the county was without authority to delegate the discretionary power of his office in making investments respecting sinking-funds; and that the contract was an entire contract, and, because it contained the aforesaid void and illegal provisions, the entire transaction and agreement which said contract evidenced was null and void.

The petition alleged that it was the official duty of Whitfield to disclose to his successor all the facts relating to the alleged disposal of the certificates, and all the terms and conditions under which the trust company held the certificates; that it was the duty of Whitfield to preserve and keep all documents and writings relating to said certificates where the same could be readily and reasonably found, and to disclose to his successor where the certificates were, and upon what terms and conditions they were held by the trust company; that it was the duty of Whitfield, as commissioner of roads and revenues of the county, to recover from the trust company the certificates, which the company held without

authority of law, and to take whatever steps might be necessary to render said agreement between the county and the trust company null and void; that, in the event there was not sufficient time between the actual delivery by the county to the trust company and the expiration of the term of office of Whitfield, it was the duty of Whitfield as a public officer to begin necessary procedure to recover the certificates from the trust company, even though the procedure might not be fully completed during Whitfield's term of office; that in bringing the suit against Whitfield, the surety on his bond, and the Trust Company of Georgia, Lee did what Whitfield while commissioner was bound in law to do to recover the public property of the county and place the same in the possession of the officer of the county who was legally responsible therefor; that it was the duty of Lee, as commissioner of roads and revenues, to do that which Whitfield as his predecessor in office had failed and refused to do, although in duty bound to so do, to wit, to recover the property of the county from a third party who held it without authority of law; that it was the duty of Lee as commissioner of roads and revenues of Pulaski County to perform that duty upon his discovery that the trust company, a third party, unlawfully held the certificates; that Lee, the successor of Whitfield, did perform the duty, which Whitfield, while commissioner, failed and refused to perform, by bringing action against Whitfield, the surety on his bond, and the trust company; that, because of the failure and refusal of Whitfield to perform his duty to the county in the foregoing particulars, Whitfield's official bond was breached; and that in the performance of a duty which Whitfield as commissioner should have performed, the county incurred traveling expenses of $45, and attorney's fees of $2500, all of which were reasonable, necessary, and proper charges incurred by the county in its successful effort to recover from the trust company, a third party, the property of the county unlawfully held by the trust company.

The petition contained no allegation that the trust company was at any time insolvent, or that the county ever made any demand, or even a request, upon the company for the return of the securities. Furthermore, there is no averment in the petition that the alleged breach of Whitfield's official bond diminished the value of the securities, or that the county suffered any loss therefrom, ex-

cept the payment by it of reasonable attorney's fees and reasonable traveling expenses, or the obligation to pay them. This being a suit on the official bond of Whitfield, the plaintiff has the burden of establishing, not only the breach of the bond, but that such breach proximately caused damage to the county. The contention of the county is that Whitfield breached his bond by delivering the certificates to the trust company and by failing to recover them therefrom; and that, although the county sustained no actual damage because of these breaches, it is entitled to recover from Whitfield and his surety on the bond the expenses, including attorney's fees, of the previous action instituted by the county through Lee, its new commissioner, on the theory that such litigation was *necessary* to recover from the trust company the physical custody of the securities. Conceding (but not deciding) that the contract between the county and the trust company was illegal, and that Whitfield breached his official bond by delivering the securities to the company and by failing to recover them therefrom, it clearly appears from the facts and averments of the petition that the county could have recovered the securities from the trust company without any litigation; and therefore the first suit instituted by the county was unnecessary. It is shown by the petition, and commissioner Lee should have known as a matter of law, that the contract was revocable at any time by the county; and that the only necessary action, if the contract were valid, was to notify the trust company that the contract was revoked, and to demand or request that the securities be returned. On the other hand, if the contract were illegal, Lee should have known as a matter of law that the trust company was unlawfully holding the securities, and should have assumed that the company would return them to him upon a demand or request. There is no allegation in the petition that the trust company was insolvent or unable or unwilling to return the securities upon a demand or a mere request; and under the rule that a petition must be construed most strongly against the plaintiff, the instant petition shows that the county could have secured the return of the certificates by demanding or requesting the trust company to return them. Moreover, we must assume this to be true, for it would have been the duty of the trust company to deliver the certificates to the county on demand and upon notice of a revocation of the contract; and no allegation

to the contrary having been made in the petition, it must be assumed that the trust company would have performed that duty. *Truluck* v. *Peeples,* 1 *Ga.* 3.

It is apparent from the facts and allegations of the petition that commissioner Lee, if he had exercised ordinary care and diligence before filing the suit, would have demanded or requested of the trust company to return the certificates to him, and that his request would have been complied with. It follows that any attorney's fees or expenses incurred by the county in the litigation can not justly be charged to the breach of Whitfield's official bond. Moreover, the only items of damages contained in the petition are attorney's fees and traveling expenses alleged to have been incurred by the county in the previous suit. That action was voluntarily dismissed by the county, a settlement of the case having been made. The first suit was on the identical official bond declared upon in the present action, and the first suit prayed for judgment against Whitfield and his surety "for the costs, damages, and expenses incurred by it [the county] now and hereafter in prosecuting the present suit." While the trust company and the county were the only parties to the settlement contract, by the express provisions of the contract it was to operate not only as a complete compromise and settlement of all controversies between the parties to the contract, but "especially in settlement of all issues involved in a suit recently brought by Pulaski County in Pulaski superior court against Trust Company of Georgia, J. J. Whitfield, and others." In view of that language, it clearly appears that the contract of settlement covers the cause of action declared upon in the present case. However, the able counsel for the plaintiff contends that the settlement contract did not release the surety, because its risk was not thereby increased. We do not think that principle of law is applicable here. The applicable principle is that there can be but one satisfaction for one wrong, and the acceptance of such satisfaction from one of two or more joint defendants satisfies and extinguishes the cause of action against all of them. In *Donaldson* v. *Carmichael,* 102 *Ga.* 40, 42 (29 S. E. 135), the court said: "The plaintiff is entitled to only one satisfaction; and if the manner of releasing one involves satisfaction in whole or in part of the claim, it will enure to the discharge, pro tanto, of all who are liable (98 N. Y. 412; 44 Barb. (N. Y.)

347, 50 Wis. 138) ; and if a party injured accept satisfaction from one of several joint tort-feasors, that is a bar as to all. Cooley on Torts (2d ed.), p. 161." See *Griffin Hosiery/Mills* v. *United Hosiery Mills,* 31 *Ga. App.* 450 (120 S. E. 789) ; *Edmondson* v. *Hancock,* 40 *Ga. App.* 587, 591 (151 S. E. 114).

We can not agree to the contention of counsel for the county that Lee, the commissioner, had no authority to make the settlement contract, and therefore that the contract was illegal and void. Where a county, as in this case, holds a claim for unliquidated damages, the sole commissioner, as the governing authority of the county, has the discretion of determining how much the claim is, and when it is satisfied. The cases relating to State governments, cited by counsel for the county, are not applicable here. As well expressed in the brief of counsel for the defendants : "A county is not a sovereign; it is a corporation and a political subdivision of the State. Its fiscal authority must of necessity exercise discretion in agreeing upon and adjusting controversies between the county and others. That discretion is conferred by legislative enactment which confers complete and exclusive jurisdiction and authority, in managing and controlling the property of the county, upon the ordinary, and authorizes him to audit and allow claims against the county. With respect to these matters, the ordinary, or county commissioner here, occupies the same relation to the county as the General Assembly occupies to the State. There is no statute which prohibits the commissioner from compromising a claim the county may have against another, where the law does not fix the liability and the amount of the liability. Accordingly, such matters fall within the broad discretion vested in the commissioner, and any contract he may have made, which is not tainted with fraud (and none is here alleged), must be enforced. Certainly the county should not be permitted to retain the fruits of the settlement contract, while at the same time disavowing its burdens. If a contract is prohibited by law, it is of course invalid; but the prohibition must be express or arise by necessary implication from some statute clothing another with the power or making provision for the exercise of the function with which the action taken is inconsistent. Here there is neither, but on the contrary the statute, at least by necessary implication, does clothe the commissioner with power to determine whether the

county has a valid claim for unliquidated damages, and to compromise such a claim." For the foregoing reasons, it is our opinion that the action was properly dismissed on general demurrer.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*